is 418-0411, Corp Construction Services of Illinois v. Zurich American Insurance, General Elevator, Life of the Beam. For the appellant is David Miller. You are he, sir? Yes, Your Honor. Is that pronounced correctly? No, but I always say it's Miller, just as though it is spelled with an I. Okay, so it's David Miller. Thank you, Mr. Miller. For the appellee, Robert Larson, you are he, sir? Yes. Mr. Miller, may I proceed, sir? Thank you, Your Honor. May it please the court, counsel, as always, I appreciate the opportunity, first of all, to appear before the court and to make the position of my client as clear as I can. And in particular, I appreciate this court's consideration of the matter, as does my client. We are here today following the entry of judgment on the pleadings at the outset by the trial court pursuant to Section 2615E of the Code of Civil Procedure. Judgment on the pleadings was entered against the plaintiff, my client, for construction, and in favor of both defendants, Zurich Insurance Company and the Schindler Elevator Corporation. I want to point out that the judgment in favor of Schindler Elevator was brought, despite the fact that we had asked for no affirmative relief from Schindler. Specifically, and as is customary in insurance coverage cases, particularly those involving additional insurers, in seeking a declaration of whether there is or is not coverage under the policy, the insured is identified and named as a party in interest. Here, the complaint for declaratory judgment contains, as paragraph 5, Schindler is joined as a defendant in this cause in that it is potentially liable to court in the event that it failed to obtain insurance under the Zurich policy for claims which are made by Deneen, the underlying plaintiff, against Kaur in the underlying case. Schindler was represented by the same counsel as is representing Zurich in the case. Zurich's position is to establish that there is no coverage. It would appear, based upon our allegation here, that Schindler's interest would be more aligned with those of Kaur in wanting to see that there is coverage under the Zurich policy. And that brings us back to the linchpin, which is the master subcontract agreement between Kaur and Schindler. That requires that Schindler purchase additional insurance, a liability insurance, and have Kaur as a party insured under an endorsement which must be at least as broad as ISO additional insured form BCG 2010-1185, which we identify as what is known as an arising out of endorsement. If Schindler is taking the position that the endorsements in question are not arising out of endorsements, then Schindler is sticking its neck out because Schindler did not purchase the insurance which it was required to purchase pursuant to the contract. Is any of that necessary for a resolution of this case by us? It is by way of background whether it is necessary or not. I do not know because of the judgment that was entered in favor of Schindler. And what is the significance there? Is that a determination that this contract did not require an arising out of endorsement? If, as we submit, the endorsements that were purchased, the CG 2026 endorsements, that are the Zurich endorsements, and as the court is well aware, we set them forth, they trigger coverage with respect to bodily injury caused in whole or in part, by the actual omissions of Schindler as the named insurer. We submit that those are, in fact, arising out of endorsements that are triggered here and that Zurich has a duty to defend CORE against the allegations of the complaint in the Deneen case. As the court is well aware, the duty to defend is broader than the duty to indemnify. The duty to defend is triggered whenever the underlying pleadings, here the underlying pleadings being in the Deneen case, show a potential or possibility for coverage. The possibility for coverage is then compared back to the language of the endorsement, and therefore is it possible that the injuries for which Deneen is seeking recovery from CORE were caused in whole or in part by his work for his employer, Schindler. And that's just looking at it from the perspective of the underlying complaint. The underlying complaint alleges that at the time of the accident, Deneen was working for Schindler. Therefore, his activities arose out of and in the course of his employment by Schindler. In addition, the third-party complaint that was filed by State Farm against Schindler contains specific allegations of negligence against Schindler. When we get back to where the dispute started, the defense of CORE was tendered by CORE's representative and by its third-party administrator back to Schindler and back to Zurich. The response to that was a denial on the part of Zurich, saying that there is nothing in the underlying complaint that would establish that the liability number one of CORE is the result of negligence on the part of Schindler. Specifically, that Schindler was guilty of negligence number one, or number two, that even if Schindler were guilty of negligence, that by operation of law, Schindler's negligence would in some respect be imputed to CORE. Why can't CORE pursue a third-party complaint like State Farm did? CORE has. Has. Has. That's for contribution in the case. In the underlying case, while it's not a part of the record here, a CORE subsequent to the declaratory judgment action, I believe, did and is pursuing a contribution claim against Schindler. That turns on the apportionment of fault under the Contribution Act, as opposed to Schindler's obligation to purchase insurance, which provides a defense to CORE in the underlying case. As I understand, State Farm, however, did not pursue a declaratory judgment, right? State Farm is not pursuing a declaratory judgment. I read in one of the briefs that the same firm represents CORE and State Farm. I'm just curious as to why there's two different approaches taken on behalf of these clients who are both additional insurers, at least allegedly. In essence, there is no different approach realistically in the case. And as you will see in virtually all of these construction-related cases, you have a daisy chain or tier of parties responsible down to the employer. So here we have at the top, State Farm is the owner. Owners are very seldom found liable in cases of this sort, construction negligence cases. Then you have the general contractor, which is my client, CORE. Then you have the subcontractor, which is Schindler, who also happens to be the employer. So these generally go down to the employer. So the owner's contract with CORE says that CORE will include the owner as an additional insured and have the obligation and duty to defend the owner, State Farm. So that is what CORE is doing pursuant to CORE's policy and pursuant to CORE's contract with State Farm. Then we get to the next tier, and at that tier, Schindler says to CORE, All right, in exchange for being allowed to do the work on this job, we agree to include you as an insured because it is our employees who may be injured, and if as a result of giving us the contract and the opportunity to do the work, you were sued by one of our employees arising out of, and as you can see in the endorsement itself, in the performance of ongoing operations for the additional insured, then you have the obligation to include us as an additional insured, and under the policy, first of all, to defend, and that's what we're here on, just the duty to defend, and thereafter to indemnify, depending upon how the facts in the underlying case lay out. That's why the duty to defend is so significant and is a threshold consideration being broader than the duty to indemnify. You don't know whether in the end here there would be an obligation on the part of Schindler to indemnify CORE. That would turn again on whether the facts lay out that the injury sustained by Deneen was caused in whole or in part by any act or omission on the part of his employer, Schindler. We believe that that's what the facts will clearly show, but we don't get there on the duty to defend. Duty to defend says, hey, by virtue of public policy, every insurance contract, liability contract, contains two covenants that are imposed upon the liability insurer. First is the duty to defend, and the duty to defend includes defending any complaint with allegations that are liberally construed in favor of the insured. If the facts alleged fall within or potentially within the policy's coverage, the insurer is obligated to defend the insured. This is true even if the allegations are groundless, false, fraudulent, and even if only one of several theories of recovery alleged in the complaint falls within the potential coverage of the policy. So we're here at that threshold, and the trial judge said, as a matter of law, construing the declaratory, the allegations of the declaratory judgment complaint most favorably in favor of CORE, you cannot recover under these endorsements. There cannot, as a matter of law, be any potential that the claims of Deneen were caused in whole or in part by the operations, the acts or omissions of Schindler. And then going one step further and saying, as a matter of law, even though there was no relief sought against Schindler, I'm going to construe this contract to say that Schindler did not undertake to purchase insurance, which would have provided a defense to CORE based upon the allegations of the complaint. As I indicated previously, the arguments that have been made and that were accepted by the trial court, I believe, although we don't have a record of the trial court's thinking, the arguments that were made are that under these endorsements, there has to be a showing of negligence on the part of the named insured Schindler, and that that is imputed vicariously to CORE. And we point out in both our appellant's brief and our reply brief the consistent cases that have been decided on those issues since the Supreme Court's decision in construction negligence cases in Kearney v. Union Pacific Railroad Company, in Pekin Insurance v. Sentex, and Pekin Insurance v. Lexington, the court held that there was a duty to defend where there were no allegations of negligence on the part of the named insured, and no direct nexus or allegations that any negligence on the part of the named insured would be vicariously imputed to the additional insured. And those were clear-cut vicarious liability endorsements which said that there is coverage only if the named insured is negligent and only if that negligence is imputed to the additional insured. Mr. Miller, I found your citation, which you just referenced, Pekin v. Sentex, to be very helpful for the position you're taking. However, it is inconsistent with Pekin v. Roszak, R-O-S-Z-A-K. Are you familiar with that case? I'm familiar with all of the Pekin Insurance cases. Why should we follow Sentex instead of Roszak? Because Sentex, and I was involved, I did the amicus brief for the Illinois Chamber of Commerce in the Kearney v. Union Pacific case, wherein I took the position and the Supreme Court accepted it, that there is no vicarious liability under section 414 of the Restatement Second of Torts, which is the controlling body of law in construction negligence cases. And I won't belabor the public policies that underpin all of this. At that point, because I represent a lot of insurance carriers on the other side of the equation, in other words, those who write vicarious or imputed liability endorsements, I said, well, this should be the end of it. And it wasn't the end of it, because when Pekin Insurance sought declaratory judgment based upon the Kearney case, the first district then notched it up one and said, look, we don't have to have these specific allegations anymore. Previously, we went both ways, back and forth, back and forth on vicarious liability endorsements. Are you saying then that Roszak, if I'm pronouncing that correctly, is no longer good law? It would no longer be good law in the first, and I submit that the first district is wrong in error in its decisions, but we have to live with whatever law there is. In the Sentex and in Lexington, the first district said that we are, even though the underlying complaint doesn't say that the named insured was negligent, why, if they're the employer and there's a liability suit here, the employer is the one that is in control of the employee's work. Therefore, we're going to say that the employer, based upon the standard of possibility, is a possibility that the employer is negligent. And then here's the good one. Mr. Miller, before you're out of time, have you read Hastings Mutual Insurance Company v. Blinderman? Blinderman, yes. Blinderman. I don't know. You may be right. Blinderman or Blinderman, I have read it. That's the exclusion case. They seem to distinguish Roszak on a different basis. They do. Which I didn't really understand. Okay, they do on the basis that the endorsement there contains an exclusion, and Hastings Mutual asserted the exclusion, and it is incumbent upon the party asserting an exclusion to establish the exclusion, and therefore it is not as if it is written into the insuring agreement, which is what we have here. So the Hastings decision turns on the application of the Hastings Mutual exclusion. Your time is up, Mr. Miller. You have an opportunity to address this again in rebuttal. I was right at the point of the second prong, which I will pick up with, given further opportunity. Keep your thoughts. You'll have a chance to speak to us. Okay. Mr. Larson, you may proceed, sir. May it please the Court, Justices. Counsel. Counsel, good afternoon. So what's interesting about Plaintiff's argument is that much of the argument is based upon policy language that's not actually in the policy, and arguments regarding the underlying construction contract and what it supposedly should have called for, according to Plaintiff's counsel, rather than what's actually in the policy endorsements. I found it extraordinary in reading Plaintiff's appellant's brief that he cited the language from CG endorsements off of an ABA website and then made the arising out of argument based upon what's on this ABA website, rather than the language from the policy that's at issue here. It's this Court's role to determine the application of the policy that's actually before it, not some policy that Plaintiff cites off of a website. So I don't understand exactly where Plaintiff is going with that. There are a couple of things I would like to address in Mr. Miller's comments. With respect to the ruling of the trial court, the trial court was presented with a declaratory judgment action. Schindler was named as an interested party. Of course, when they determined that coverage wouldn't apply, everybody's out of the case. They didn't make a determination as to the underlying contract. And whether a breach of contract action exists, whether, as Justice Turner brought up, there could be the basis for a third-party complaint for contribution, is not before this Court. I will say that actually, respectfully, to esteem counsel here, there hasn't been a third-party complaint filed by CORE. There was one filed by State Farm. There was not one, at least that hasn't been noticed to me, that was filed by CORE seeking contribution. That contribution, of course, would be limited because Schindler is the employer. I'm sure this Court is well aware of the limitations on that. But that is another avenue available to CORE. I would also note that that issue wasn't raised until this appellate court level, as are several of the issues raised by plaintiff's counsel. I also don't know why we keep coming back to this issue of a supposed conflict. What my relationship is with my clients is my concern. The issue here before the Court is whether or not the policy mandates coverage, whether the trial court appropriately looked at the pleadings, looked at the policy, and made a determination. Whether that has implications for Schindler or not, I won't speak to my attorney-client-privileged communications with my clients. Suffice it to say, those issues are addressed. I understand the posture of the insurance company in this case. It's fundamentally based on the idea that the complaint against Schindler here does not include any allegations against the employer. Is that right? The complaint against CORE. You're on CORE. Excuse me, I misspoke. It does not include any allegations against Schindler, who is the employer. That is correct, nor does it include any language that even would implicate Schindler. It actually alleges against CORE that they failed to warn Schindler of a concern. And in addition, as I mentioned earlier, there are some things that are being ignored, particularly the UGL endorsement that counsel does not seem to want to address. That is part of the policy. There's never been an allegation that it's not part of the policy. For the first time on appeal, the issue is raised, well, we didn't see it. Therefore, it shouldn't be enforced, or it's ambiguous. Well, the reason I ask that is because of a quotation from Sentek's home, which is a 2017 case that Justice Turner had reference to, in which the first district wrote the following. The allegations of the underlying complaint must be read with the understanding that the employer may be the negligent actor, even where the complaint does not include allegations against that employer. Silences to any acts or omissions of the employer must be understood as the possible result of tort immunity for employers under the worker compensation laws and should not be a basis for refusing to defend an additional insurer. Now, it seems to me, and I confess that this is not my strong suit, so you folks are much more familiar with it than I, but it seems to me that that's the factual context, essentially in this case, and that if we were to affirm the trial court and agree with you, we would have to be concluding that the first district in Sentek's homes was wrong. Now, quick to add, we can do that. We're not bound by it. On the other hand, there seems to be, like, they didn't make this up. There seems to be a series of cases following this. So I suppose the first question I have is why isn't the situation I just wrote to you from Sentek's homes the factual context of this case? And if it is, as it appears to me to be the case, why shouldn't we follow Sentek's homes? Thank you. So I think Sentek's is distinguishable for the reasons I set forth in our brief. Well, I've got your brief in front of me, and I can see maybe it's my own limitations, and it's entirely possible, but I have trouble understanding the distinction that you tried to draw. So here's your chance to do it again. Thank you. In Sentek's, the court specifically relied upon the fact that there were allegations regarding it was a wall that fell on the plaintiff, and it was the employer who erected the wall. So while, yes, the complaint against the general contractor was silent as to the third-party defendant's negligence, those factual allegations gave a basis to reach a conclusion that the employer may have been involved. It wasn't just a generic allegation. Well, but the phrase is, must be understood as the possible result of tort immunity. And in this case, the suit against the court talks about problems with the escalators, I recall, and Schindler was the people who were putting it in, weren't they?  It was a piece of equipment for an escalator that was being moved, and someone, presumably under Cora's employee, ran over, tripped, and knocked into the plaintiff and knocked him down, causing his injury. So the distinction is, in Sentek's homes, silence as to any acts or omissions of the employee mustn't be understood as the possible result of tort immunity, but in this case, it's not possible? I think that is accurate, and I'll explain. Not possible is a pretty high standard. I don't think Sentek's is saying that mere silence means, if you're an employer on a construction site, you are always obligated to accept the tender of defense. I think that's taking Sentek's too far. Sentek's said, yes, the mere fact that there not being a specific allegation against the employer in the complaint, because obviously the plaintiff wouldn't bring that allegation, or a third-party plaintiff wouldn't bring that allegation, because it doesn't serve their interests if it's a workers' compensation-related case. But are the facts as alleged in the complaint such that they raise a reasonable basis to believe the possibility that the employer may be at fault? And here, you have somebody who's innocently pushing a piece of equipment, and the allegations in the complaint are that Cora failed to control the site, allowed somebody to run around on the site, who ran into the plaintiff and caused his injury. There is no allegation that Schindler was doing something that allowed for this accident to happen, or was negligent in some way, but that's being imputed to the- Sentek's also seems to stand for the proposition that since there would be tort immunity under workers' compensation laws, that we shouldn't expect the employer to have to be singled out in the complaint. What's the point of that, they seem to be saying? And I think the issue there is they don't have to be singled out in the sense that you have to say, and Schindler did X negligently, but there have to be facts upon which one could have a basis beyond just utter speculation to say, because otherwise literally you're saying if the employer's on the site, it's their employee, it's always a duty to defend. And I don't think Sentek's goes that far. I don't think the other cases- Possible results. I suppose we could draw a distinction between some third-party pedestrian or person visiting, I guess this is a building of State Farm Insurance, who happened to be walking by and tripped over something that shouldn't have been there, and there would be no reason under this hypothetical to think that somehow Schindler was the cause of this, that this third-party could have sued anybody and there would be no workers' compensation issue that would leave Schindler out. But here, you know, thinking Sentek's in this body of case law, it seems to be saying that your point is a good one. Maybe that's where we are. If we have someone who is an employee of a subcontractor who sues the contractor, maybe unless there's reason to think there's no liability that's possible for the employer, that the insurance company has to provide a defense. I understand where you're going with that. The phrase is the possible result must be understood as the possible result. That's pretty strong language. It is, and yet I think it has to be read in the context of the further evaluation of that by the court in Sentek, because I think that has broader implications if we're saying an employer cannot even defend a tender if they happen to be on the site. If, for instance, the complaint had alleged that CORE had failed to supervise Schindler's employees, failed to supervise Mr. Dineen, or failed to instruct him in safe measures, which wouldn't directly implicate Schindler, but would suggest that something was done by him to contribute to his negligence or by Schindler to contribute to what happened, without actually stating anything directly against Schindler. I think that would be more the fact of the matter. Can we conclude, based on what's before us, could the trial court conclude that, or can we rule out that potential exists that Schindler's acts or omissions caused Dineen's injuries? I think based upon the pleadings that were before the court, yes, we can. We can rule it out? I think so in terms of what has been alleged. There's nothing alleged in the complaint that gives the court a basis to say there's a possibility that Schindler contributed to what happened here. This was another person who ran into the plaintiff. Sure, you could create wild speculation that, well, gosh, Schindler should have had perimeter security guarding the person as he's moving the equipment to make sure nobody ran over and knocked him over. Aren't we allowed to consider State Farm's third-party complaint? That's a difficult one. I don't think so, and I would say the reason for that, and by the way, we haven't gotten to the issue of the specific additional insured endorsement that limits liability to Schindler's negligence, which counsel did not address, the UGL endorsement that we sort of set aside. But in answer to your question, Justice Turner, and now the question's just breezed out of my mind. The question was, doesn't case law allow us to take into consideration State Farm's third-party complaint and the allegations of negligence therein? And what I started to say was, I think in this particular case, I don't think that would be appropriate for a couple of reasons, aside from the fact that it's not in the four corners of the plaintiff's pleading. The allegations by State Farm are relative to vicarious liability for State Farm. State Core Construction isn't even part of that, and as I indicated, counsel, Mr. Miller's firm is actually counsel for both State Farm and for Core Construction. There is language that says that becomes self-serving to rely upon that as a basis to find a duty to defend. But there's no allegation in the third-party complaint by State Farm that would implicate anything that, and it's all, the allegations are all very boilerplate. There's nothing that specifically alleges a factual circumstance similar to what they talked about in Sentex, where Schindler was specifically involved in this aspect of the work that led to the plaintiff's injury, even if we're not going to specifically state Schindler was negligent. And so under the circumstances of this case, I don't think it would be appropriate. Counsel, I think I interrupted Justice Kavanaugh. I want to make sure he gets a chance to ask his question. Absolutely. Thank you. Just referring back to Justice Steigman's comments with regard to the body of case law, the Sentex case, there's also the case law we have to weed through with regard to the duty to defend, if in fact we're going to find there are no allegations sufficient to allege your case. So just in sort of quoting the case law, we've got the allegations are liberally construed in the insurance favor in the context of a duty to defend. Any doubt regarding the duty to defend is resolved in favor of the insured. The court may consider evidence beyond the underlying complaint. And the underlying complaint need not expressly name all the insured. So I think it's – I just want you to speak to this. I know you have another point to get to, but it's not just the body of case law with regard to Sentex and its progeny. It's also with regard to the duty to defend that when we wade through the allegations, it errs to the benefit of the insured. I agree. Certainly the case law says what it says, and I think the trial court evaluated it. I understand this is a noble review. But it's not unlimited. It's not – in no circumstance is the duty to defend ever not triggered. Isn't that where, like, Hastings comes into effect and the actual notice provisions of the Cincinnati case are reviewed? I forget who cited Cincinnati, but – I believe it does. Yeah. So once Zerk's on notice, it's not a surprise when the allegations potentially could name the insured, not the insured, the employer. Well, the fact that they're on notice doesn't create some additional duty. The issue is whether once they're put on notice, do they have an obligation to defend if, in fact, those factual circumstances arise that would trigger the duty to defend? And I guess I'm – I want to illustrate to you, being a new member of the court, that's what I'm wading through, that particular case law, in making a determination whether or not they've alleged a potential issue. So it's – in the context of Sentex, it's a very high standard for you to meet. I agree. I think Sentex has to be read in its entirety, just as the contract and the policy need to be read in their entirety. But I understand your concerns, Justice Kavanaugh. I do think that if one considers that case in its entirety, it's not as universal. I don't think the court intended. And if it did, frankly, then I think it is not well-reasoned, and this court should look to other case law that is more limiting in that regard. Let me ask you this question. Is my understanding correct that pursuant to the subcontract agreement, Chandler was responsible both for the work on the escalator and the safety and supervision of its employees? The safety and supervision, yeah, that's in every contract. Thank you. And the work on the escalator? The work on the escalator, although in this case, again, there wasn't work being done actively on the escalator. That wasn't my question. The question is, pursuant to the subcontract agreement, was Chandler responsible for the work on the escalator? They were responsible for their aspect of the work on the escalator. Well, given that, then, here's the next question. Given these, isn't it possible that Chandler could be found to have failed to provide a safe, suitable, and proper work site, and failed to use reasonable care in the exercise of control on the construction work related to the escalators? I don't think so under these circumstances, Your Honor. This wasn't a situation where Mr. Deneen was actively working on the escalator itself, and something happened that caused him to fall. He was moving a piece of equipment, and somebody ran over and knocked it down. Why is that distinction meaningful for purposes of determining whether or not the insurance company should provide a defense? Because I think, in reading it in its full context, there needs to be something more than just saying, hey, is it your employee? Because in every construction case, the employer is always responsible for their employees. I've never seen a construction contract that doesn't require this. Well, if you don't remember, it was his employee who, at the end of the work shift, got in the car and drove to the parking lot and ran into somebody. Here we're talking about Chandler being responsible for work on the escalator. Your claim is, well, they're moving something to the escalator that's not sufficient for work on the escalator. Going to Justice Kavanaugh's point, it sounds like a rather cramped interpretation of what work on the escalator means. I think if those allegations, the broader allegations, were in the complaint, that might be an argument that could be made. That's not what's being alleged in the underlying complaint. I don't know if I have a moment to go through anything else. There's still another red light goes on. I want to hear your UGL endorsement. Sure. Quickly, Bill. Absolutely. So the language of the UGL endorsement specifically says, and was disregarded, this insurance applies only to bodily injury or property damage arising solely out of negligent acts, errors, or omissions of the named insured while the named insured is actively engaged in operations at the site designated in the contract between the named insured and the additional insured. Now, council has suggested a couple of things that were raised for the first time on appeal, that we didn't see this provision, even though it was in the response to the tender, and therefore you can't enforce it or it's in conflict with these other endorsements. And there's nothing, there's no case law that I've seen that says, well, you can read one endorsement and disregard the other endorsement. They're all part of the contract. And this particular endorsement specifically limits the obligation to defend and indemnify to those circumstances. Your time is up. My distinguished colleague, Justice Gellin, had a question. I want to make sure he gets a chance to ask it. No, I was going to ask about that issue. In fact, I didn't answer the question, so thank you. Thank you for your time, Justice. Thank you, counsel. Mr. Miller, any rebuttal, sir? I do. You say that with excitement in your voice. I'm not sure if that's a good sign. As the court can tell, I do enjoy this immensely, listening to counsel's arguments that reminds me of the man who climbed in a pocket and tried to lift himself by the handle. There just isn't any traction here. First and foremost, we have the situation that this is not, as we point out, a vicarious liability endorsement. In Sentex and Lexington, we had clear-cut vicarious liability endorsements. And we point out that even if the endorsements here, instead of being caused in whole or in part, were vicarious liability endorsements than Sentex and Lexington, it would control to create the possibility, the possibility of coverage under the policy. The Illinois Supreme Court in Pekin Insurance v. Wilson picked up on the reasoning of the First District in the Halliburton Root case and said that in considering whether or not coverage is triggered, you can look at the third-party complaint and the First District in the Sentex, and Lexington picked up on that, and I think in particularly in Lexington, where they said, well, let's look at the contract, and I believe it was Mr. Justice Steigman here who said, look, the contract here, and we point this out in our submissions, puts safety on the job as the responsibility of the named insured employer, Schindler. So if you look per Wilson v. Pekin Insurance v. Wilson at the third-party complaint, then you have a litany of the third-party complaint of acts and omissions on the part of the named insured employer, Schindler, that caused the accident and the injuries for which a recovery is sought. So if we look at the specific language of the two endorsements, caused in whole or in part by the acts or omissions, and we follow the interpretation and construction rules of this court and of the Illinois Supreme Court that you apply the commonly understood meaning to a term, and we define acts and omissions, and we define in whole or in part. The disjunctive or right before part means that if it is any conduct, an action, or an omission, again picking up on the discussion, here the third-party complaint sets forth a litany of omissions, and we have the contract that says that safety is the responsibility of the Schindler. We've got the threshold question here of duty to defend. Mr. Miller, before you run out of time, Mr. Larson says that you have completely ignored the UGL endorsement. What's your response to that? Okay, the answer to that is I don't think that it is material, but we did not ignore it in our briefs because that would be an imputed liability or vicarious liability, sole negligence endorsement. And even if that were the case, then Sentex and Lexington, they would control. But we have here the contract that says that 20 CG endorsements are going to be purchased. We are seeking coverage under those endorsements as an additional insurer. The UGL or ugly endorsement, as I refer to it, has nothing at all to do with the insurer's obligations. They can't, pursuant to the undertaking with Schindler, write the right endorsements and then put in an endorsement for whatever reason that wholly negates. And what we have and indicate is there is any time you have an ambiguity in a policy as to whether there are coverage, and we say here we've got a conflict or ambiguity between the three endorsements, the endorsements that prefer coverage are those that will be enforced. And I have much more I could say, but I don't think the court wants to give me that time. Thank you, Mr. Miller. Thank you, counsel. This motion will take us right over to the advisory committee to be in recess.